Katherine I. Hartley (ISB # 11837)
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur d'Alene, ID 83816
P: 858-945-6924
khartley@pji.org

Carmen E. Lyon*
PACIFIC JUSTICE INSTITUTE
P.O. Box 17651
Tucson, AZ 85731
P: 520-444-4780
clyon@pji.org
*seeking pro hac vice admission

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROGER DEAMICIS,<br><br>  Plaintiff,<br><br>v.<br><br>BOISE STATE UNIVERSITY, a public university; JEREMIAH SHINN, in his official capacity as interim president of Boise State University; JENN FIELDS, in her official capacity as Student Media Publication Board Chair; JULIA SHARKEY, in her official capacity as Student Organizations Coordinator; EMILY CARMELA NELSON, in her official capacity as Editor-in-Chief of The Arbiter; DOES 1-10, Inclusive,<br><br>  Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT [42 U.S.C. § 1983]**<br><br>[Demand for Jury Trial] |

Plaintiff Roger DeAmicis, by and through his undersigned counsel, alleges as follows:

**OVERVIEW**

1.      This is a civil rights action for relief against Boise State University ("BSU"). It is

brought under 42 U.S.C. § 1983 and the U.S. Constitution.

1

2.      This action challenges university policy that restricted Mr. DeAmicis's freedom of speech.

3.      Mr. DeAmicis sought to advertise in BSU's student newspaper, The Arbiter.

4.      Mr. DeAmicis wished to advertise for his website, Answers4Seekers.org, which is dedicated to aiding individuals in exploring various topics from a spiritual and religious standpoint. The ad stated, "Seek Answers to the Big Questions . . . Professional science and historical publications used and cited in most topics. Come and Explore!" The advertisement is attached as Exhibit A.

5.      The Arbiter rejected Mr. DeAmicis's Answers4Seekers.org ad based on the content and viewpoint of the ad. Specifically, Emily Carmela Nelson, a university student staff member who is the paid Editor-in-Chief of The Arbiter rejected the ad solely because of its spiritual/religious overtones. The email thread is attached as Exhibit L.

6.      Ms. Nelson cited the most recent iteration of The Arbiter's policy when informing Mr. DeAmicis that no political or religious advertisements were allowed in The Arbiter, based on the sole discretion of the publication's editor-in-chief. The policy is attached as Exhibit C.

7.      The Arbiter is BSU's official university newspaper. The "About Us" webpage is attached as Exhibit D.

8.      The Arbiter comes under the purview of BSU's Student Media Department. The "Staff" webpage is attached as Exhibit E.

9.      To "get involved" with any Student Media group, including The Arbiter, BSU students may volunteer or apply for paid positions. The "Get Involved" webpage is attached as Exhibit F.

10.      To write for The Arbiter, "students are encouraged to apply for paid staff positions." *See*, Exhibit F.

2

11.     A Student Media Publication Board is responsible for hiring The Arbiter editor-in-chief. Attached is the "Publication Board" webpage marked as Exhibit G.

12.     The Board Chair of the Student Media Publication Board is Senior Involvement Programs & Projects Coordinator Jenn Fields. *See*, Exhibit G and Exhibit H ("Staff" webpage).

13.     The Board is responsible for selecting and appointing The Arbiter editor-in-chief. *See*, Exhibit G and Exhibit I ("Boise State University Publications Board Bylaws" webpage).

14.     The Arbiter editor-in-chief "provides leadership and support to the Arbiter staff." *See*, Exhibit I.

15.     The Arbiter editor-in-chief "represents the Arbiter to external campus entities." *See*, Exhibit I.

16.     The Arbiter editor-in-chief "will work 20 hours per week, 12 hours of which will be during regular Boise State business hours." *See*, Exhibit  I.

17.     The Arbiter editor-in-chief's "term of office will begin May 1st and will end May 15 of the following year." *See*, Exhibit I.

18.     To apply for the position of editor-in-chief, students must submit an application through BSU's job application system called "Handshake." BSU's "Position Openings" webpage is attached as Exhibit J, and BSU's "The Arbiter Position Openings" webpage is attached as Exhibit K.

19.     The editor-in-chief is paid an "hourly wage of $10." *See*, Exhibit I.

20.     The Board may elect to remove the editor-in-chief for reasons that include but are not limited to the following: "persistent and flagrant violation of board or university policies and procedures," "serious managerial inadequacies," and "fiscal mismanagement or misappropriation of funds." *See*, Exhibit I.

21.    The Arbiter Management Team currently includes Student Organizations Coordinator Julia Sharkey, as well as Editor-in-Chief Emily Carmela Nelson and other student staff members. *See*, Exhibit E.

22.    The Arbiter is able to operate due to mandatory student fees, utilization of BSU campus and resources, and participation by students enrolled in courses controlled by professors. The Arbiter is advised by a BSU staff member, and BSU pays the student editors, making the decision-makers for The Arbiter state actors.

23.    The vitality of civil and political institutions in our society depends on free discussion. It is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected.

24.    Mr. DeAmicis asserts that the restrictions by Defendants violated his rights under the U.S. Constitution.

**PARTIES**

25.    Plaintiff Roger DeAmicis is an individual residing in the State of Idaho.

26.    Defendant Shinn is the interim president of Boise State University and is ultimately responsible for university policies.

27.    Defendant Fields is the Chair of the BSU Student Media Publication Board.

28.    Defendant Sharkey is BSU's Student Organizations Coordinator and Manager of The Arbiter.

29.    Defendant Nelson is The Arbiter's Editor-in-Chief and a paid employee of BSU.

30.    Defendants' policies and procedures allowed for the actions taken by The Arbiter.

31.    Plaintiff is unaware of the true names, capacities, or basis for liability of Defendants Does 1 through 10, inclusive, and therefore sues said Defendants by their fictitious names. Plaintiff

will amend this Complaint to allege their true names, capacities, or basis for liability when the same have been ascertained. Plaintiff is informed and believes and on that basis alleges that Defendants Does 1 through 10, inclusive, and each of them, are in some manner liable to Plaintiff.

32.     Defendants are sued in their official capacities.

## JURISDICTION AND VENUE

33.     The Defendants are located within this judicial district and division. All of the events and omissions giving rise to the claims alleged herein occurred in this judicial district and division. Therefore, this Court has personal jurisdiction over the Defendants.

34.     Furthermore, venue is proper in this Court and in this division under 28 U.S.C. § 1391(b).

35.     This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1343(a)(3).

36.     This Court has the authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202.

37.     This Court has the authority to grant the requested damages pursuant to 28 U.S.C. § 1343.

38.     This Court has the authority to award attorneys' fees under 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

39.     The Arbiter permits a variety of ads in its publication.

40.     The Arbiter's advertising policies are governed by its own internal policy. *See*, Exhibit A.

41.     On October 6, 2025, Mr. DeAmicis submitted an ad for publication in The Arbiter.

42.    The ad was meant to promote Answers4Seekers.org, a website that explores a variety of topics from a spiritual and religious standpoint.

43.    Answers4Seekers.org was started in 2023 as a free information portal, focused on supporting young adults in their quest to explore the big questions of life. They provide free documents on many related topics and endeavor to support those topics with substantial professional materials and references. Where appropriate, they compare this information to the biblical narrative. Answers4seekers exists to provide an additional viewpoint among the marketplace of competing ideas.

44.    In the past, a variety of advertisements were permitted in The Arbiter. But presently, The Arbiter changed its policy to close advertising spaces to any political or religious advertising.

45.    The Arbiter's policy also gives the editor-in-chief unfettered discretion to accept or deny an ad.

46.    Articles with political or religious themes are regularly printed in The Arbiter.[1]

47.    According to its website, The Arbiter is the official news sourse of BSU, where student editors make all content decisions, and those editorial staff members are paid by BSU.

48.    All staff members of The Arbiter are paid student employees.

49.    Students seeking the editor-in-chief position must apply though BSU's employment portal, Handshake.

50.    The selected editor-in-chief is paid an hourly wage and is supervised by a paid university employee with a title of Manager.

---

[1] *See*, *e.g.*, https://www.arbiteronline.com/2026/02/15/boise-residents-businesses-want-ice-out/; https://www.arbiteronline.com/2025/02/12/love-vs-legislation-how-idahos-legislature-is-impacting-the-lgbtq-community/.

51.     The editor-in-chief must work at minimum twenty hours per week, and twelve of those hours must be worked during BSU's regular business hours.

52.     The editor-in-chief is a paid BSU employee subject to BSU polices and procedures, minimum hourly requirements, and a manager, and may be terminated for failure to comply with stated policies or to meet job duty requirements.

53.     Students enrolled in BSU media courses may also write for The Arbiter and be overseen by BSU professors.

54.     The Arbiter operates on BSU's campus, utilizing the university's public resources.

55.     BSU's budget provides for over $300,000 to be designated to operate The Arbiter. *See*, Exhibit B at p. 119 (BSU's Local Fund Operating Budge).

56.     Specifically, BSU earmarks an employee salary of 0.6 FTE for The Arbiter. *See*, Exhibit B.

57.     The Arbiter is also supported by mandatory student fees that facilitate extracurricular activities.

58.     Mr. DeAmicis has been and continues to be harmed by The Arbiter's advertising policy. The Arbiter's policy chills Mr. DeAmicis' speech by preventing him from advertising, and effectively eliminates certain messages, particulary his message to have open conversations about important topics in the marketplace of ideas.

## FIRST CLAIM FOR RELIEF
### Violation of Plaintiff's Free Speech Rights in Violation of 42 U.S.C. § 1983
### (Against Defendants)

59.     Mr. DeAmicis refers to and hereby incorporates the preceding paragraphs as though fully set forth herein.

60.     The Free Speech Clause of the First Amendment to the U.S. Constitution provides, in

7

relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

61.     The Free Speech Clause applies to the states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

62.     The Free Speech Clause prohibits restrictions of speech that are based on content or viewpoint.

63.     The First Amendment permits a public university to charge its students an activity fee used to fund a program to facilitate extracurricular student speech, provided that the program is viewpoint neutral. The Arbiter's policy to exclude all religious or political ads is not viewpoint neutral.

64.     In looking at substance over form, BSU is a state actor as to the decisions made by The Arbiter and is therefore subject to the First Amendment.

65.     The Arbiter's restriction on religious and political speech is unconstitutionally vague.

66.     The Arbiter's restriction on religious and political speech is unconstitutionally overbroad.

67.     The Arbiter's restriction on religious and political speech constitutes content and viewpoint discrimination, which is presumptively unconstitutional and subject to strict scrutiny.

68.     There is no compelling interest in restricting political or religious ads, particularly when politics and religion are regular subjects of articles in The Arbiter.

69.     A blanket ban by a publication on all political or religious ads at the sole discretion of one editor is violative of the Free Speech clause.

70.     Congress has provided a vehicle for seeking relief from constitutional violations via 42 U.S.C. § 1983. Mr. DeAmicis therefore brings this action pursuant to § 1983.

## PRAYER FOR RELIEF

Mr. DeAmicis respectfully requests that this Court enter judgment against Defendants and provide the following relief:

### ON ALL CAUSES OF ACTION:

1. A declaratory judgment against all Defendants that Defendants violated the First Amendment to the U.S. Constitution;

2. An award of nominal damages against Defendants;

3. An award of attorneys' fees, costs, and expenses against all Defendants pursuant to 42 U.S.C. § 1988.

4. A preliminary and permanent injunction prohibiting Defendants from enforcing their speech-chilling policies and practices against Plaintiff; and

5. Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Mr. DeAmicis demands a trial by jury with respect to all claims so triable.

Respectfully submitted this 13th day of April 2026,

/s/ Katherine Hartley
Katherine Hartley (Idaho Bar No. 11837)
PACIFIC JUSTICE INSTITUTE
PO Box 2131
Coeur d'Alene, ID 83816
khartley@pji.org

*Counsel for Plaintiff*

9

## VERIFICATION

I, Roger DeAmicis, am the Plaintiff in the above-captioned matter. I have read the Complaint and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true. I declare under penalty of perjury, under the laws of the United States and the State of Idaho, that the foregoing is true and correct. Executed this __11__ day of April 2026, in the County of _____ADA_____, Idaho.

_Roger DeAmicis_
Roger DeAmicis, Plaintiff